**GUST ROSENFELD, PLC**
One South Church Avenue, Suite 1900
Tucson, Arizona 85701-1627
Tele: (520) 628-7070
Fax: (520) 624-3849

Jill L. Holt
ASB #026270/PCB #66277
*jholt@gustlaw.com*

Gerard R. O'Meara
ASB #002434/PCB #42620
*gromeara@gustlaw.com*

Attorneys for Regal Manor Properties

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Bankruptcy Case No. 4:10-bk-00028-JMM |
| REGAL MANOR TOWNHOUSES, | Chapter 11 |
| Debtor. | OPPOSITION TO DEBTOR'S MOTION TO REINSTATE CASE |

Comes now Julie Davis, Marilyn Sullivan and Don Saffer, on behalf of Regal Manor Properties ("Properties"), a secured creditor and party in interest, by and through undersigned counsel, and hereby requests that this Court deny Debtor's Motion to Reinstate Case, because cause to vacate the Court's dismissal order does not exist under Fed. R. Bankr. P. 9024. The bases of the Properties' Opposition are set forth in the Memorandum attached hereto.

Dated this 28th day of July, 2010.

                GUST ROSENFELD, P.L.C.

                By /s/ Jill L. Holt
                 JILL L. HOLT, ESQ.
                 Attorneys for Regal Manor Properties

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. FACTS:

1. Properties holds a secured interest in property, consisting of ten (10) parcels of real property located in Pima County, Arizona, commonly known as Regal Manor Condominiums: 720 N. Kolb Rd., Units 1-10, Tucson, Arizona ("Condominiums").

2. Debtor's case was filed January 4, 2010, approximately 7 months ago. Pursuant to the Case Management Order entered by this Court on March 27, 2010, Debtor was required to file a Disclosure Statement and Chapter 11 Plan of Reorganization by July 6, 2010. Additionally, Debtor did not file any monthly operating reports, and the United States Trustee filed a Motion to Convert or Dismiss the case on June 17, 2010. This Court dismissed Debtor's case on July 23, 2010, due to Debtor's failure to file a Disclosure Statement and Plan of Reorganization, and to respond to the United States Trustee's Motion. That same day, Debtor finally filed an Opposition to the United States Trustee's Motion, a draft of its Disclosure Statement, and operating reports for the months of January- June 2010. Debtor now seeks reinstatement of its case.

3. Debtor has absolutely no "skin in the game". Debtor acquired the Condominiums from the prior owner, Gulf Union, on the eve of a trustee's sale set by Properties. Prior to the trustee's sale, Gulf Union had defaulted on mortgage payments to Properties and allowed the building to fall into disrepair and allowed several years' real property taxes to accrue.

Essentially, Gulf Union was just pocketing rents. On the eve of the trustee's sale, Debtor purportedly acquired Gulf Union's interest in the Condominiums for a $200,000.00 carry-back note and immediately filed a bankruptcy petition. <u>Debtor expended no actual monies to acquire the Condominiums</u>. Rather, it is simply using the bankruptcy process to buy time to see if it can obtain investors or "flip" the property. In essence, Debtor wanted to purchase the Condominiums at the Trustee's sale but lacked the liquid funds to do so, and is using the bankruptcy process as a free "option" period. This is the height of bad faith.

4. Properties initially agreed that Debtor could use cash collateral so long as enough funds were generated to maintain the building and pay default interest on the delinquent real property taxes. However, Debtor has failed to generate enough operating revenue even to pay for maintenance and interest on the taxes and is in default of its obligations under the Cash Collateral Order.

5. Additionally, on July 26, 2010, Properties paid $93,400.41 in delinquent property taxes on the Condominiums, in an effort to protect the property from foreclosure by tax lien holders. Properties has also paid nearly $30,000.00 in attorney fees, and is owed almost $80,000.00 in delinquent mortgage payments from Debtor. Properties intends to move forward with the Trustee's Sale set for August 9, 2010, unless Debtor pays a minimum of $200,000.00 to reimburse and bring current its obligations to Properties.

<u>2. ARGUMENT:</u>

1. Because reinstatement of a case is not recognized in the bankruptcy code or rules, the only effect a motion to reinstate can have in a case is to vacate the order of dismissal. *Diviney v. Bank of Texas* (*In re Diviney*), 211 B.R. 951, 962 (Bankr. N.D. Okla. 1997). A motion to vacate the dismissal order is brought under Fed. R. Bankr. P. 9024. Under Rule 9024(b)(6), a court can grant relief from an order dismissing a case for any reason justifying such relief.

2. In its Motion to Reinstate Case, Debtor argues that the case should be reinstated because it has filed operating reports and paid quarterly fees to the United States Trustee, because it has filed a draft of its Disclosure Statement, which shows it has a Plan of Reorganization in "reasonable prospect," and because its failure to timely respond to the United States Trustee's Motion resulted from an "excusable calendaring oversight."

3. Debtor has not shown cause for reinstatement of its case under Rule 9024. Debtor failed to file operating reports or a Disclosure Statement until seven (7) months after filing its petition, in violation of the Bankruptcy Code and this Court's orders. A draft of a Disclosure Statement, which provides only vague statements and no solid payment terms regarding the treatment of creditors' claims, does not prove that a confirmable Plan of Reorganization is in reasonable prospect. Furthermore, a calendaring oversight is neither excusable nor good cause for reinstatement. In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993), the U.S. Supreme Court held that the determination as to whether a party's neglect is excusable is essentially equitable in nature, and is to be determined by weighing all relevant circumstances, including danger of prejudice. If anything, equity demands that the case remain dismissed, as Properties has paid nearly $130,000.00 in delinquent property taxes and attorney fees to protect its position, and is owed nearly $80,000.00 in mortgage payments. On the other hand, Debtor has suffered no prejudice, as it has not expended any of its own monies on the Condominiums. Reinstatement of the case would force Properties to once again continue the Trustee's Sale and allow Debtor to continue to avoid paying its creditors while the Condominums fall further into disrepair.

### 3. CONCLUSION:

1. If the case is reinstated, Properties will continue to suffer prejudice while Debtor continues to drag its feet and abuse the bankruptcy process. WHEREFORE, Properties respectfully requests that this Court deny Debtor's Motion to Reinstate Case.

RESPECTFULLY SUBMITTED this 28th day of July, 2010.

                              GUST ROSENFELD P.L.C.

                              /s/ Jill L. Holt   026270
                              Jill L. Holt, Esq.
                              Attorneys for Regal Manor Properties