STUBBS & SCHUBART, P. C.
ATTORNEYS AND COUNSELLORS AT LAW
340 NORTH MAIN AVENUE
TUCSON, ARIZONA 85701
(520) 623-5466

JEFFREY H. GREENBERG
PIMA COUNTY COMPUTER NO:        21764
STATE BAR NO:                              7661

ATTORNEYS FOR                  DEBTOR

# THE UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

*In Re:*

REGAL MANOR TOWNHOUSES, LLC
an Arizona limited liability company

　　　　Debtor.

Case No: 4:10-bk-00028-JMM
*[Chapter 11 Proceedings]*

DEBTOR'S REPLY TO OPPOSITION TO
MOTION TO REINSTATE CASE

Regal Manor Townhouses, LLC, an Arizona limited liability company ("Regal Manor" or the "Debtor"), hereby submits the accompanying Memorandum of Points and Authorities in Reply to the Opposition to Debtor's Motion to Reinstate filed by Regal manor Properties Limited Partnership.

DATED this 3rd day of August, 2010.

STUBBS & SCHUBART, P. C.

By:/s/ Jeffrey H. Greenberg
JEFFREY H. GREENBERG
Attorneys for Debtor

**MEMORANDUM OF POINTS AND AUTHORITIES**

This Court has jurisdiction to reconsider its dismissal of this Case and grant Debtor's Motion to Reinstate ("Motion").[1] *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.),* 503 F.3d 933, 940 (9th Cir.2007); In re AVI, Inc., 389 B.R. 721, 729 (BAP 9th Cir. 2008). The resolution of the Debtor's Motion may be based on "such terms as are just"[2] which is understood to implicate generally recognized principles of equity. See generally, 11 Wright & Miller, *Fed. Prac. & Proc.* § 2857. The Bankruptcy Court has wide discretion in ruling on such motions, but it has also been recognized that "dismissal of a Chapter 11 case is a drastic measure" and should be granted only "upon a strong evidentiary showing." *In re Dark Horse Tavern*, 189 B.R. 576, 580 (Bankr.N.D.N.Y. 1995); *see also*, *In re General Growth Properties*, 409 B.R. 43, 56 (Bankr.D.Ariz. 2009) (Dismissal of a Chapter 11 case, as a general rule, should be "granted sparingly and with great caution."); *In re Momentum Hospitality III, LLC*, 418 B.R. 442, 444 (Bankr.M.D.Fla. 2009) (On a motion to dismiss "given the rehabilitative purpose of Chapter 11, all doubts are to be resolved in favor of the debtor.")

The propriety of granting of a motion to dismiss a Chapter 11 case generally involves a two step process. *In re AVI, Inc.*, 389 B.R. 721, 729 (BAP 9th Cir. 2008). The Court must first determine whether cause exists to warrant dismissal. *Id.* "Once cause has been established, the Court must then determine whether dismissal or conversion of the case . . . is in the best interests of the creditors and the estate." *In re Products International Company*, 395 B.R. 101, 107 (Bankr.D.Ariz. 2008). Both

---

[1] This equitable power has been formalized in Bankruptcy Rule 9024, which makes Fed.R.Civ.P. 60(b) applicable in cases under the Code. *Id.; see also Geberegeorgis v. Gammarino (In re Geberegeorgis),* 310 B.R. 61, 66 (6th Cir.BAP2004) (bankruptcy court authorized to set aside a final judgment or order including case dismissal orders under Rule 9024).

[2] Fed.R.Civ.P. 60(b)

Stubbs & Schubart, P.C.
ATTORNEYS AND COUNSELLORS AT LAW
340 NORTH MAIN AVENUE
TUCSON, AZ 85701
(520) 623-5466

- 2 -

*Reply to Opposition to Motion to Reinstate*

1    determinations are required to properly support dismissal. *In re AVI, Inc.*, 389 B.R.
2    at 729.

3         In the present Case, there are unusual and exceptional circumstances which
4    mitigate against dismissal. In addition, and even more important, dismissal does
5    not serve the bests interests of all the creditors and the estate. Debtor has now filed
6    a Plan and Disclosure Statement (collectively, the "Plan") which provides for the
7    protection of the estate and all the creditors. This includes Regal Manor Properties
8    Limited Partnership ("First Lender"), and its first lien position under ten (10)
9    separate deeds of trust. The Plan specifically provides for the payment of all post-
10   petition obligations to the First Lender, including the First Lender's payment of pre-
11   petition real property taxes. These taxes were paid shortly after the Court's
12   dismissal was entered and Debtor's Motion to Reinstate were filed.

13        Even though there is authority to support the contention that the First
14   Lender's payment of the real estate taxes should still be considered a Pre-Petition
15   obligation, Debtor's Plan does not assert that position. *See e.g.*, *In re AVI, Inc.*, 389
16   B.R. 721, 731 (BAP 9th Cir. 2008) (Bankruptcy Court may reinstate Case
17   retroactively). Instead, the Plan specifically provides for the establishment of an
18   escrow fund to generally cover and reimburse the back taxes on or before the
19   Effective date. The Plan also specifically provides for the establishment of an escrow
20   fund to generally cover these interests. The availability of monies for this Escrow
21   Fund, in the amount of $125,000.00 is confirmed by the correspondence attached
22   hereto as Exhibit "1". *See also*, Debtor's Plan §§ 1.25, 2.7-2.16.

23        This Case also involves usual circumstances.[3] First, the Debtor has not

24

---
25   [3]  The Debtor's efforts were also slowed by the existence of foundation issues with three of the Lots.
     The determination of the necessary repairs was an additional complication in the formulation of an
26   appropriate Plan.

STUBBS & SCHUBART, P.C.
ATTORNEYS AND COUNSELLORS AT LAW
340 NORTH MAIN AVENUE
TUCSON, AZ 85701
(520) 623-5466

- 3 -

*Reply to Opposition to
Motion to Reinstate*

received or controlled any of the rents or handled any of the disbursements from the amounts collected. The First Lender had a receiver appointed by the Pima County Superior Court approximately a month before the Debtor acquired the property involved in this Case.

In an attempt to cooperate with the First Lender, the Debtor consented to the Receiver remaining in place for purposes of collecting the existing rents. The Receiver, in turn, was jointly instructed by Debtor and the First Lender to disperse all amounts collected, and exceeding the monthly expenses, to the First Lender. It was the understanding of the Debtor that such disbursements were being made by the Receiver.

The First Lender now asserts that no payments were made by the Receiver. If, as the First Lender asserts, no such payments were made, it was an oversight on the part of the Receiver. The report received from the receiver in July, reflects that for the period January through the end of June, 2010, rents exceeded the operating expenses by approximately $20,000, even though they Receiver, without the prior knowledge or consent of Debtor, wrote-off $6535.00 of June rents. A copy of the July report received from the Receiver was attached to the Debtor's Operating Report previously filed with the Court. In any event, this issue will be rendered moot by the Debtor's Plan, which provides for the payment of all post-petition amounts over and above any payments disbursed by the Receiver to be paid in full on or before the effective date of the Plan.

The First Lender's Opposition also argues that the Debtor cannot file a confirmable plan because the ten Lots are not being operated profitably as rental units. This argument misses the point. The real value of the Lots is not in rental income, it is in the ultimate sale of the lots. The Plan provides for the systematic

Stubbs & Schubart, P.C.
Attorneys and Counsellors at Law
340 North Main Avenue
Tucson, AZ 85701
(520) 623-5466

- 4 -

*Reply to Opposition to*
*Motion to Reinstate*

1   renovation and sale of the units over a reasonable period of time.

2         For the foregoing reasons, dismissal of the Debtor's Chapter 11 Petition is not

3   in the bests interests of the estate and all the creditors, considered as a whole.

4   Dismissal will serve only the interests of the First Lender. Permitting Debtor to

5   proceed with the confirmation process will not only protect the estate, but also the

6   second lien holder, the prior owner; the Plan also addresses the principal concerns of

7   the First Lender.  Consequently, Debtor requests this Court to grant its Motion to

8   Reinstate subject to "such terms as are just" under the circumstances.

9         RESPECTFULLY SUBMITTED this 3rd day of August, 2010.

10                  **STUBBS & SCHUBART, P. C.**

11

12               By:/s/ Jeffrey H. Greenberg
                    JEFFREY H. GREENBERG
                    Attorneys for Debtor

13

14  Emailed this 3rd
    day of August, 2010, and
    mailed the 3rd day of

15  August, 2010, to:

16  Elizabeth C. Amorosi, Esq.
    U.S. Trustee's Office

17  230 N. First Ave., Ste. 204
    Phoenix, Arizona 85003

18  Elizabeth.c.amorosi@usdoj.gov

19  Jill L. Holt Esq.
    Gust Rosenfeld PLC

20  1 S. Church Ave., Ste 1900
    Tucson, Arizona 85701-1627

21  jholt@gustlaw.com

22

23  /s/ Vivian A. Bozich

24

25

26

Stubbs & Schubart, P.C.
Attorneys and Counsellors at Law
340 North Main Avenue
Tucson, AZ 85701
(520) 623-5466
        - 5 -        *Reply to Opposition to
Motion to Reinstate*

## STUBBS & SCHUBART, P. C.
ATTORNEYS AND COUNSELLORS AT LAW
340 NORTH MAIN AVENUE
TUCSON, ARIZONA 85701
(520) 623-5466

JEFFREY H. GREENBERG
PIMA COUNTY COMPUTER NO:     21764
STATE BAR NO:                7661

ATTORNEYS FOR          DEBTOR

# THE UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

*In Re:*

REGAL MANOR TOWNHOUSES, LLC
an Arizona limited liability company

Debtor.

Case No: 4:10-bk-00028-JMM
*[Chapter 11 Proceedings]*

DECLARATION OF DEBTOR

I, Franklin Eldridge, hereby declare under penalty of perjury:

1.     I am the manager of the member of the Debtor in this case.

2.     The circumstances surrounding the filing of the Chapter 11 Prtion in this Case are accurately set forth in the Disclosure Statement filed by the Debtor.

3.     At the time the Petition was filed, a Receiver had been appointed by the Pima County Superior Court to control and collect rents for the ten (10) separate lots that were acquired by the Debtor.

4.     The Receiver has remained in place and has collected all the rents and made all disbursements from the amounts collected. The Debtor has not received any of the rents.

5.     In early April, 2010, the Debtor and First Lender each directed the Receiver to pay amounts received and exceeding the operating expenses each month to the First Lender. It was my understanding that two payments were made immediately and that subsequent months were being made. It was not until approximately July 8, 2010, while I was out-of-town that I received a message that

some payments had not been made. When I returned to Tucson the week of July 12, 2010, I attempted to clarify the situation with the Receiver, but had difficulty doing so because the staff person handling Regal Manor was out of the office because of recent surgery.

6.     A July Report was received from the Receiver covering the period January through June, 2010, which was attached to the Debtor's Operating Report for January through June, 2010, previously filed with this Court.

7.     The Report from the Receiver indicates that from January through June, 2010, the Receiver had received close to $20,000.00 above operating expenses even though the Receiver's staff wrote-off $6,335.00 in June rents. This write-off was done without any prior notice, or the consent or approval of the Debtor.

8.     The Debtor had a draft Plan and Disclosure Statement in early June that was being reviewed by parties who have agreed to make capital contributions or provide financing for the repair of the foundation, renovation of the properties and the implementation of the Plan. The filing of the Disclosure Statement and Plan was delayed, in part, because of a the issues related to determining the value three units affected by foundation issues and a potential transaction involving several of the Lots, which would have substantially altered the Plan.

9.     The Debtor has authorized the filing of a Plan which provides for the all post-petition payments not made from the funds collected by the Receiver to be made to the First Lender, including reimbursement of all real estate taxes paid by the First Lender. The Plan requires these amounts to be made to be paid on or before the effective date of the Plan.

10.     To cover these payments to be made to the First Lender, the Plan provides for the establishment of a fund of $125,000.00, to be used for that purpose.

Stubbs & Schubart, P.C.
Attorneys and Counsellors at Law
340 North Main Avenue
Tucson, AZ 85701
(520) 623-5466                    - 2 -                    *Declaration of Debtor's Counsel*

Attached as Exhibit 1 hereto are true and accurate copies of correspondence confirming the availability of monies in existing bank accounts to cover the fund provided for in the Plan.

11.    The Debtor's intent is to sale the Units over a reasonable period of time. Based on reasonable renovation and sale of the Units, the Plan submitted by the Debt is feasible and will result in protecting the interests of all the creditors, including the First Lender and second lien holder, as well as the Debtor.

DATED this 3rd day of August, 2010.

/s/ Frank Eldridge
FRANK ELDRIDGE

STUBBS & SCHUBART, P.C.
ATTORNEYS AND COUNSELLORS AT LAW
340 NORTH MAIN AVENUE
TUCSON, AZ 85701
(520) 623-5466

- 3 -

*Declaration of Debtor's Counsel*

EXHIBIT A

**Michael W. McLaughlin**
9830 N. La Reserve Dr.
Oro Valley, Tucson, AZ 85737
Phone: 909-6318

August 2, 2010

Mr. Jeffrey Greenberg, Esq.
Stubbs and Schubart, P.C.
Attorney at Law                     2 Pages-Via Fax and Email only
301 N. Main Ave.
Tucson, Arizona 85701

Re: Funds for the Regal Manor Townhouses LLC Bankruptcy

Dear Mr. Greenberg,

I have been working with the Regal Manor Townhouses LLC, the current owner of the Regal Manor property, in its efforts to reorganize the financial condition of the Regal Manor property. The owner asked that I provide you with a letter confirming the availability of funds for implementing its bankruptcy reorganization plan. Attached is a letter from Wells Fargo Bank regarding two of my accounts totaling approximately $125,000. I have designated the funds in these accounts for the debtor's use in connection with the confirmation of an acceptable plan of reorganization.

Please feel free to use this information as necessary to facilitate your efforts on behalf of the debtor.

Sincerely,

Michael W. McLaughlin

EXHIBIT B



**Wells Fargo Bank**
3755 W Cortaro Farms Rd.
Tucson 85741, AZ
520 572-5010
520 572-5049 Fax
800 869-3557 24 Hr. Customer Service

Regarding Customer:
      Michael William Mc Laughlin
      9830 N La Reserve Dr.
      Tucson, AZ 85737

To Whom It May Concern:

This letter is verification that the customer named above has accounts with Wells Fargo. Account, number xxxxxx4662, has a current balance of $122,299.48 and account number xxxxxx4605, has a current balance of $2,686.40.

Please call the Wells Fargo Customer Service location at 1-800-869-3557 (1-800-TO-WELLS) if you have any questions. We hope that this information is useful.

Sincerely,

Nikki Baker
Personal Banker
Thornydale and Cortaro Office
3755 W. Cortaro Farms Road
Tucson, AZ 85742